UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE PETROBRAS SECURITIES LITIGATION

This Document Applies to:

*Dimensional Emerging Markets Value Fund, et al. v. Petróleo Brasileiro S.A – Petrobras*, No. 15-cv-2165 (JSR)

*Skagen, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-2214 (JSR)

*New York City Employees' Retirement System, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-2192 (JSR)

*Transamerica Income Shares, Inc., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-3733 (JSR)

*Aberdeen Emerging Markets Fund, et al. v. Petróleo Brasileiro S.A. – Petrobras*, No. 15-cv-3860 (JSR)

*Ohio Public Employees Retirement System v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-3887 (JSR)

*Central States Southeast and Southwest Areas Pension Fund v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-3911 (JSR)

*Washington State Investment Board v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-3923 (JSR)

*Aberdeen Latin American Income Fund Limited, et al. v. Petróleo Brasileiro S.A. – Petrobras*, No. 15-cv-4043 (JSR)

*NN Investment Partners B.V., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-4226 (JSR)

*Aura Capital Ltd. v. Petróleo Brasileiro S.A. – Petrobras, et al.*, No. 15-cv-4951 (JSR)

No. 14-cv-9662 (JSR)

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS THE INDIVIDUAL ACTION COMPLAINTS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

PROCEDURAL BACKGROUND........................................................................... 4

ARGUMENT ........................................................................................................... 5

I.    CERTAIN INDIVIDUAL PLAINTIFFS HAVE NOT ADEQUATELY
PLEADED THAT THEY POSSESS STANDING TO ASSERT ANY
CLAIMS ....................................................................................................... 5

II.   THE MTD OPINION REQUIRES DISMISSAL OF SEVERAL CLAIMS
IN THE INDIVIDUAL ACTIONS ............................................................... 9

    A.    None of the Individual Plaintiffs Plead That They Purchased Petrobras
Notes in a Domestic Transaction Under Morrison ..................................... 9

    B.    All of the Individual Plaintiffs' Section 12(a)(2) Claims Must Be
Dismissed for Lack of Standing.................................................................. 11

    C.    Certain of the Individual Plaintiffs' Claims Should Be Dismissed to
the Extent They Cover Time Periods Beyond the Relevant Statutes
of Repose .................................................................................................... 13

    D.    Certain Section 11 Claims Must Be Dismissed for Failure to Plead
Reliance....................................................................................................... 14

    E.    Certain Brazilian Law Claims Must Be Arbitrated..................................... 15

III.  ALL CLAIMS UNDER SECTION 18 OF THE EXCHANGE ACT MUST
BE DISMISSED FOR FAILURE TO PLEAD EYEBALL RELIANCE .............. 15

IV.  CERTAIN INDIVIDUAL PLAINTIFFS' NON-FEDERAL CLAIMS ARE
PRECLUDED BY SLUSA................................................................................... 19

V.   THE SECTION 12(A)(2) CLAIMS MUST ALSO BE DISMISSED
BECAUSE THE DEFENDANTS WERE NOT "STATUTORY SELLERS"....... 22

    A.    Plaintiffs Fail to Allege that Any Underwriter Defendant Is a
"Statutory Seller"....................................................................................... 23

    B.    The Petrobras Defendants Were Not "Statutory Sellers" ........................... 24

VI.  WSIB'S NEGLIGENT MISREPRESENTATION CLAIMS SHOULD BE
DISMISSED .................................................................................................... 25

A.   New York Law Governs the Negligent Misrepresentation Claim
in WSIB ......................................................................................................   25

B.   WSIB Does Not State a Claim for Negligent Misrepresentation ...............   26

VII.   ALL OF THE INDIVIDUAL PLAINTIFFS' BRAZILIAN LAW CLAIMS
BASED ON NON-BOVESPA-TRADED SHARES SHOULD BE
DISMISSED ............................................................................................................   29

VIII.   ALL SECTION 15 CLAIMS ASSERTED AGAINST HELMS MUST BE
DISMISSED BECAUSE HE WAS NOT A CONTROL PERSON.......................   31

CONCLUSION......................................................................................................................   32

APPENDIX A – CHART OF DISMISSAL ARGUMENTS APPLICABLE TO THE
PETROBRAS DEFENDANTS ................................................................................   A-1

APPENDIX B – CHART OF DISMISSAL ARGUMENTS APPLICABLE TO THE
UNDERWRITER DEFENDANTS .........................................................................   B-1

APPENDIX C – CHART OF ACTIONS NAMING UNDERWRITER
DEFENDANTS ......................................................................................................   C-1

**TABLE OF AUTHORITIES**

**Page(s)**

**Rules and Statutes**

15 U.S.C. § 77p(d)(2)(A)...........................................................................................  21

15 U.S.C. § 77r(b)(1)(A)............................................................................................  20

15 U.S.C. § 77r(b)(1)(C)............................................................................................  20

15 U.S.C. § 78c(a)......................................................................................................  22

15 U.S.C. §78r(c)........................................................................................................  13

28 U.S.C. § 1658(b)....................................................................................................  13

N.Y. C.P.L.R. § 202....................................................................................................  14

**Cases**

Absolute Activist Value Master Fund, Ltd. v. Ficeto,
677 F.3d 60 (2d Cir. 2012).........................................................................................  10

Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,
106 F.3d 11 (2d Cir. 1997) .........................................................................................  7

AHW Inv. P'ship v. Citigroup Inc.,
980 F. Supp. 2d 510 (S.D.N.Y. 2013)........................................................................  25, 26

Amidax Trading Grp. v. S.W.I.F.T. SCRL,
671 F.3d 140 (2d Cir. 2011)........................................................................................  5

Amusement Indus., Inc. v. Buchanan Ingersoll & Rooney, P.C.,
No. 11 Civ. 4416 (LAK)(GWG), 2012 WL 1193353 (S.D.N.Y. Apr. 10, 2012)...............  7

Ashcroft v. Iqbal,
556 U.S. 662 (2009)....................................................................................................  6

Barron Partners, LP v. Lab123, Inc.,
593 F. Supp. 2d 667 (S.D.N.Y. 2009).........................................................................  26

Beem v. Noble Ams. Corp.,
No. 14 Civ. 2632, 2014 WL 5317756 (S.D.N.Y. Oct. 17, 2014) .....................................  1

BP W. Coast Prods. LLC v. SKR Inc.,
989 F. Supp. 2d 1109 (W.D. Wash. 2013)..................................................................  29

**Page(s)**

CAC Grp., Inc. v. Maxim Grp., LLC,
No. 12 Civ. 5901 (KBF), 2012 WL 4857518 (S.D.N.Y. Oct. 10, 2012) ........................... 26-27

Caiafa v. Sea Containers Ltd.,
525 F. Supp. 2d 398 (S.D.N.Y. 2007) ................................................................. 5

City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,
752 F.3d 173 (2d Cir. 2014) ............................................................................ 10-11

Colonial Imps. v. Carlton N.W., Inc.,
121 Wash. 2d 726 (Wash. 1993) ...................................................................... 29

Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch,
No. 12 Civ. 9351 (JPO), 2013 WL 3762882 (S.D.N.Y. July 18, 2013) ........................... 7, 8

Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l,
790 F.3d 411 (2d Cir. 2015) ............................................................................ 7

Dekalb Cnty. Pension Fund v. Transocean Ltd.,
36 F. Supp. 3d 279 (S.D.N.Y. 2014) .................................................................. 13

DeMaria v. Andersen,
153 F. Supp. 2d 300 (S.D.N.Y. 2001), aff'd, 318 F.3d 170 (2d Cir. 2003) ...................... 22, 24

Deutsche Zentral-Genossenschaftsbank AG v. HSBC N. Am. Holdings, Inc.,
No. 12 Civ. 4025 (AT), 2013 WL 6667601 (S.D.N.Y. Dec. 17, 2013) ............................ 27

Devaney v. Chester,
709 F. Supp. 1255 (S.D.N.Y. 1989) ................................................................... 28

Dexia SA/NV v. Deutsche Bank AG,
Nos. 11 Civ. 5672 (JSR), 11 Civ. 6141 (JSR), 2013 WL 98063 (S.D.N.Y. Jan. 4, 2013) . 29

Dimond v. Darden Rests., Inc.,
No. 13 Civ. 5244 (KPF), 2014 WL 3377105 (S.D.N.Y. July 9, 2014) ............................ 5

Flaherty Funding Corp. v. Johnson,
105 A.D.3d 1445 (N.Y. App. Div., 4th Dep't 2013) ............................................... 27

Franco v. Conn. Gen. Life Ins. Co.,
818 F. Supp. 2d 792 (D.N.J. 2011) ................................................................... 7

Giar v. Centea, a Div. of KBC Bank, NV,
No. 02 Civ. 7916(LLS), 2003 WL 1900836 (S.D.N.Y. Apr. 16, 2003) ........................... 1

Golden Archer Invs., LLC v. Skynet Fin. Sys.,
No. 11 Civ. 3673 (RJS), 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) .............................. 28

Page(s)

Griffin v. PaineWebber, Inc.,
No. 99 Civ. 2292 (VM), 2001 WL 740764 (S.D.N.Y. June 29, 2001)..............................24

Gross v. Diversified Mortg. Investors,
431 F. Supp. 1080 (S.D.N.Y. 1977), aff'd, 636 F.2d 1201 (2d Cir. 1980)........................28

Gustafson v. Alloyd Co.,
513 U.S. 561 (1995)...................................................................................................11

Heit v. Weitzen,
402 F.2d 909 (2d Cir. 1968)........................................................................................15

In re Alstom SA,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)......................................................................15, 19

In re Bear Stearns Cos. Secs., Derivative, & ERISA Litig.,
995 F. Supp. 2d 291 (S.D.N.Y. 2014)......................................................................16, 17

In re BP p.l.c. Sec. Litig.,
MDL No. 10-md-2185 (S.D. Tex. Sept. 30, 2014), ECF No. 1022...................................22

In re Crude Oil Commodity Litig.,
No. 06 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007)..........................28

In re Enron Corp. Secs., Derivative & ERISA Litig.,
540 F. Supp. 2d 800 (S.D. Tex. 2007) .........................................................................18

In re Lehman Bros. Sec. & ERISA Litig.,
No. 09 MD 2017 (LAK), 2012 WL 6603321 (S.D.N.Y. Dec. 17, 2012) ..........................21

In re Marsh & McLennan Cos. Sec. Litig.,
501 F. Supp. 2d 452 (S.D.N.Y. 2006)...........................................................................16

In re Merrill Lynch & Co. Research Reports Sec. Litig.,
272 F. Supp. 2d 243 (S.D.N.Y. 2003)...........................................................................23

In re Morgan Stanley Info. Fund Sec. Litig.,
592 F.3d 347 (2d Cir. 2010)........................................................................................22

In re Petrobras Sec. Litig.,
__ F. Supp. 3d __, No. 14-cv-9662 (JSR),
2015 WL 4557364 (S.D.N.Y. July 30, 2015) ..........................................................passim

In re Pfizer Inc. Sec. Litig.,
584 F. Supp. 2d 621 (S.D.N.Y. 2008)......................................................................28-29

In re Refco Inc. Sec. Litig.,
859 F. Supp. 2d 644 (S.D.N.Y. 2012)...................................................................21

In re Refco Inc. Sec. Litig.,
892 F. Supp. 2d 534 (S.D.N.Y. 2012)...................................................................25

In re Sterling Foster & Co. Sec. Litig.,
222 F. Supp. 2d 216 (E.D.N.Y. 2002) ...................................................................11

In re Suprema Specialties, Inc. Sec. Litig.,
438 F.3d 256 (3d Cir. 2006)...................................................................................16

In re UBS AG Sec. Litig.,
No. 07 Civ. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), aff'd sub
nom, City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG, 752 F.3d 173
(2d Cir. 2014)..........................................................................................................24

Int'l Fund Mgmt. S.A. v. Citigroup Inc.,
822 F. Supp. 2d 368 (S.D.N.Y. 2011)............................................................. passim

Kelley v. Rambus, Inc.,
No. C 07-1238 JF (HRL), 2008 WL 5170598 (N.D. Cal. Dec. 9, 2008), aff'd, 384 F.
App'x 570 (9th Cir. 2010) .......................................................................................17

Klein v. George G. Kerasotes Corp.,
500 F.3d 669 (7th Cir. 2007) ..................................................................................14

Lander v. Hartford Life & Annuity Ins. Co.,
251 F.3d 101 (2d Cir. 2001)....................................................................................22

LaSala v. Lloyds TSB Bank, PLC,
514 F. Supp. 2d 447 (S.D.N.Y. 2007) (Haight, J.) .................................................22

LaSala v. UBS, AG,
510 F. Supp. 2d 213 (S.D.N.Y. 2007 ).....................................................................22

Merck & Co. v. Reynolds,
559 U.S. 633 (2010).................................................................................................13

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,
547 U.S. 71 (2006)...................................................................................................20

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young,
No. 91 Civ. 2923 (CSH), 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) .....................28

Mills v. Polar Molecular Corp.,
12 F.3d 1170 (2d Cir. 1993).....................................................................................28

|  | Page(s) |
|---|---|
| Phillips v. Am. Int'l Grp., Inc., 498 F. Supp. 2d 690 (S.D.N.Y. 2007) | 27 |
| Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n, No. 14-cv-10116 (KBF), 2015 WL 2359358 (S.D.N.Y. May 18, 2015) | 7 |
| Pinter v. Dahl, 486 U.S. 622 (1988) | 11 |
| Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc, 714 F. Supp. 2d 475 (S.D.N.Y. 2010) | 11, 23, 32 |
| Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989) | 25 |
| Romano v. Kazacos, 609 F.3d 512 (2d Cir. 2010) | 19 |
| Rotanelli v. Madden, 172 A.D.2d 815 (N.Y. App. Div., 2d Dep't 1991) | 28 |
| Shain v. Duff & Phelps Credit Rating Co., 915 F. Supp. 575 (S.D.N.Y. 1996) | 24 |
| Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd., 33 F. Supp. 3d 401 (S.D.N.Y. 2014) | 16-17 |
| Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP, 612 F. Supp. 2d 267 (S.D.N.Y. 2009) | 25, 26 |
| W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100 (2d Cir. 2008) | 6, 8 |
| Woods v. Empire Health Choice, Inc., 574 F.3d 92 (2d Cir. 2009) | 5 |
| Yung v. Lee, 432 F.3d 142 (2d Cir. 2005) | 11 |

| | |
|---|---|
| 2013 Notes | Notes issued by Petrobras on May 15, 2013 |
| Aberdeen Emerging | Aberdeen Emerging Markets Fund, et al. v. Petróleo Brasileiro S.A. – Petrobras, No. 15-cv-3860 (JSR) |
| Aberdeen Lat. Am. | Aberdeen Latin American Income Fund Limited, et al. v. Petróleo Brasileiro S.A. – Petrobras, No. 15-cv-4043 (JSR) |
| ADRs | American Depositary Receipts |
| Aura Capital | Aura Capital Ltd. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-4951 (JSR) |
| BCC | Brazilian Civil Code |
| BCL | Brazilian Corporate Law |
| Bottom-Line Order | July 9, 2015 Order in the Class Action, Dkt. No. 189 |
| BOVESPA | The Brazilian stock exchange |
| Brazilian Statutes | BSA Article 2 § 2; CVM Regulations; BCL Articles 138 and 144; BCC Articles 932, 186, 187, 927, and 944 |
| BSA | Brazilian Securities Act |
| CAC | Consolidated Amended Complaint, dated March 31, 2015, filed in the Class Action |
| Central States | Central States Southeast and Southwest Areas Pension Fund v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3911 (JSR) |
| Class Action | In re Petrobras Securities Litigation, No. 14-cv-9662 (JSR) |
| Class MTD Br. | Defendants' Memorandum of Law in Support of their Motion to Dismiss the CAC, filed in the Class Action on April 17, 2015, Dkt. No. 156 |

| | |
|---|---|
| Class MTD Reply Br. | Defendants' Reply Memorandum of Law in Support of their Motion to Dismiss the CAC, filed in the Class Action on May 22, 2015, Dkt. No. 169 |
| Company | Petrobras |
| CVM Regulations | CVM Instruction No. 400/03 Article 56; CVM Instruction No. 480/09 Articles 13-19, Article 30 and Article 46; CVM Instruction No. 457/07; and CVM Instruction No. 8/79 |
| Defendants | The Petrobras Defendants and the Underwriter Defendants |
| Dimensional | Dimensional Emerging Markets Value Fund, et al. v. Petróleo Brasileiro S.A – Petrobras, No. 15-cv-2165 (JSR) |
| Dkt. No. | Docket number in the Class Action |
| Ex. | Exhibits to the Gerber Decl. |
| Exchange Act | Securities Exchange Act of 1934 |
| Gerber Decl. | Declaration of Jared Gerber in Support of Defendants' Motion to Dismiss the Individual Action Complaints, dated August 21, 2015 |
| Individual Actions | Aberdeen Emerging, Aberdeen Lat. Am., Aura Capital, Central States, Dimensional, NN Investment, NY Funds, OPERS, Skagen, Transamerica and WSIB |
| Individual Complaints | The complaints in the Individual Actions |
| Individual Plaintiffs | The plaintiffs in the Individual Actions |
| MTD Opinion | July 30, 2015 Opinion in the Class Action, Dkt. No. 194 |
| NN Investment | NN Investment Partners B.V., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-4226 (JSR) |

| | |
|---|---|
| NY Funds | New York City Employees' Retirement System, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-2192 (JSR) |
| NYSE | New York Stock Exchange |
| OPERS | Ohio Public Employees Retirement System v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3887 (JSR) |
| Petrobras | Petróleo Brasileiro S.A. – Petrobras |
| Petrobras Defendants | Petrobras, PGF, and Theodore M. Helms |
| Petrobras Notes | Notes issued by Petrobras on May 15, 2013 and March 11, 2014 |
| PGF | Petrobras Global Finance B.V. |
| SEC | Securities & Exchange Commission |
| Securities Act | Securities Act of 1933 |
| Skagen | Skagen, et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-2214 (JSR) |
| SLUSA | Securities Litigation Uniform Standards Act |
| Transamerica | Transamerica Income Shares, Inc., et al. v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3733 (JSR) |
| Underwriter Defendants | Banca IMI S.p.A., Banco Bradesco BBI S.A., Bank of China (Hong Kong) Limited, BB Securities Ltd., Citigroup Global Markets Inc., HSBC Securities (USA) Inc., Itau BBA USA Securities, Inc., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Mitsubishi UFJ Securities (USA), Inc., Morgan Stanley & Co. LLC, Scotia Capital (USA) Inc. and Standard Chartered Bank |
| USS | Universities Superannuation Scheme Limited |
| WSIB | Washington State Investment Board v. Petróleo Brasileiro S.A. – Petrobras, et al., No. 15-cv-3923 (JSR) |

Defendants respectfully submit this memorandum of law in support of their motion, pursuant to Rules 8, 9(b), 12(b)(1), 12(b)(6) and, with respect to Bank of China (Hong Kong) Limited in <u>Skagen</u>, Rule 12(b)(5) of the Federal Rules of Civil Procedure, to dismiss and/or compel arbitration of the claims asserted against them in the Individual Actions.[1]

## PRELIMINARY STATEMENT

The eleven Individual Actions, like the Class Action with which they are consolidated for pretrial purposes, accuse Petrobras and others of misleading investors by failing to disclose that Petrobras was the victim of a brazen antitrust conspiracy perpetrated by a cartel of construction companies and a handful of rogue Petrobas employees.[2] For the reasons set forth in this memorandum, the <u>Aura Capital</u> action should be dismissed in its entirety, as should large portions of the other Individual Actions.

---

[1] To the extent an Underwriter Defendant has been named in an Individual Action, it has been named solely based upon having allegedly served as an underwriter for one or more of the offerings of Petrobras Notes. The Underwriter Defendants are named only in certain of the Individual Actions and join only in the sections of the motion to dismiss addressing claims asserted in those actions. <u>See</u> Appendix C. Bank of China (Hong Kong) Limited has not been served, and reserves all rights with respect to service of process, in the <u>NY Funds</u>, <u>Skagen</u> and <u>Transamerica</u> actions. To the extent service of process has been attempted on Bank of China (Hong Kong) in New York, New York in the <u>Skagen</u> action, such service is ineffectual because it was upon Bank of China, New York Branch, a separate and independent entity that is not authorized to accept service on behalf of Bank of China (Hong Kong). Decl. of Scott D. Musoff and Exs.; <u>see</u> <u>Beem v. Noble Ams. Corp.</u>, No. 14 Civ. 2632, 2014 WL 5317756 at *4-5 (S.D.N.Y. Oct. 17, 2014) (finding service of process on foreign defendant ineffective where service was on domestic subsidiary not authorized to accept service on foreign parent's behalf); <u>Giar v. Centea, a Div. of KBC Bank, NV</u>, No. 02 Civ. 7916(LLS), 2003 WL 1900836, at *1 (S.D.N.Y. Apr. 16, 2003) (finding service on foreign bank's corporate parent ineffective service on bank where parent was distinct corporate entity not authorized to accept service on bank's behalf). Because the attempted service on Bank of China (Hong Kong) Limited in New York is deficient and of no effect, and no other attempt has been made to serve on Bank of China (Hong Kong) Limited, this action must been dismissed as against Bank of China (Hong Kong) Limited pursuant to Federal Rule of Civil Procedure 12(b)(5).

[2] Defendants previously moved to dismiss the CAC. <u>See</u> Dkt. Nos. 156, 169. Many of the arguments made in that motion are applicable to the Individual Actions, including with respect to falsity, materiality and scienter. Because the Court has resolved that motion in the MTD Opinion, however, those arguments are incorporated here, but will not be further addressed.

Standing.  The entirety of the Aura Capital action and almost all of the NN Investment and Dimensional actions must be dismissed because most (or all) of the plaintiffs in those actions are investment advisors who have not adequately pleaded that they have standing to sue.  None of those plaintiffs allege that they have suffered a personal injury in their own right; instead, all seek to assert claims on behalf of others without pleading any facts plausibly alleging that they have received a valid assignment of those claims.  These plaintiffs have not satisfied their burden of pleading facts to allege standing and their claims must be dismissed.

MTD Opinion.  Many of the claims asserted in the Individual Actions must also be dismissed under the Court's MTD Opinion in the Class Action.  Under that ruling:  (1) all federal claims concerning Petrobras Notes must be dismissed because none of the Individual Plaintiffs adequately allege that they purchased those securities in domestic transactions; (2) all claims under Section 12(a)(2) of the Securities Act must be dismissed because none of the Individual Plaintiffs adequately allege that they purchased Petrobras Notes in the initial offering; (3) certain Individual Plaintiffs' Exchange Act and common law claims must be limited by the applicable statutes of repose; and (4) certain claims under Brazilian law must be arbitrated.

Section 18 Eyeball Reliance.  All of the Individual Plaintiffs' claims under Section 18 of the Exchange Act must be dismissed because none adequately allege "eyeball reliance."  Rather, those plaintiffs rely on conclusory assertions that they relied on the alleged misstatements without pleading necessary supporting facts demonstrating what statements they relied on, when they did so, and how they relied on those statements in making particular purchases.

SLUSA Preclusion.  The non-federal claims in Central States and NN Investment, including under both common law and Brazilian law, must also be dismissed under SLUSA, which precludes the pursuit of such claims in an action that is consolidated for any purpose with

other actions that collectively seek damages on behalf of more than fifty persons. Here, the Individual Actions and the related Class Action both seek damages on behalf of more than fifty people, and thus any non-federal claims pursued by non-state actors (like the plaintiffs in Central States and NN Investment) must be dismissed.

Section 12(a)(2) Statutory Sellers. All of the Individual Plaintiffs' claims under Section 12(a)(2) of the Securities Act must also be dismissed because none of the Defendants are alleged to be "statutory sellers," as required by the statute. With respect to the Underwriter Defendants, the Individual Complaints do not allege that any Underwriter Defendant "passed title" to the Individual Plaintiffs or was "directly involved in the actual solicitation" of their purchases. With respect to the Petrobras Defendants, the relevant Notes were sold in "firm commitment" underwritings and therefore the issuers were not statutory sellers.

Negligent Misrepresentation Claims. The negligent misrepresentation claims asserted in WSIB must be dismissed under New York law, which applies under choice of law principles, because the plaintiff fails to allege that it had a "special relationship" with any Defendant. Moreover, those claims also fail because the WSIB complaint fails to satisfy the heightened pleading requirements applicable to such claims and does not plead actual reliance.

Other Brazilian Claims. Central States, NN Investments and WSIB appear to assert claims against the Petrobras Defendants under Brazilian statutes based upon the plaintiffs' alleged purchases of Petrobras securities not listed on the BOVESPA. As a matter of Brazilian law, the relevant statutes are inapplicable to those purchases.

Control Person Claims. Finally, all of the control person claims under Section 15 of the Securities Act asserted against defendant Theodore Helms – a U.S. member of Petrobras's Investor Relations Department who was neither an officer nor director of Petrobras and is not

alleged to have made or caused to be made any allegedly false statements – must be dismissed because he is not alleged to have engaged in any requisite culpable conduct. [3]

## PROCEDURAL BACKGROUND

On December 8, 2014, the first in a series of class actions was filed by a purported investor in Petrobras securities alleging that various defendants made false, misleading or fraudulent statements concerning the antitrust conspiracy that was perpetrated against Petrobras by a cartel of construction companies and a small number of co-conspirators within the company. Dkt. No. 166 at 1. Nine groups of plaintiffs subsequently moved to be appointed lead plaintiff of the consolidated Class Action and, on March 4, 2015, the Court appointed USS as the lead plaintiff in that action. Id. at 2-3. Thereafter, a number of individual actions were filed, all of which have been consolidated before this Court. Dkt. No. 10. Eleven such Individual Actions filed on behalf of more than 100 plaintiffs are the subject of this motion.

On April 17, 2015, the defendants named and served in the Class Action moved to dismiss the then-operative CAC. The Court issued its Bottom-Line Order resolving that motion on July 9, 2015, which granted in part and denied in part the motion. Dkt. No. 189. In particular, the Court:

- dismissed, with leave to amend, plaintiffs' claims under Section 12(a)(2) of the Securities Act "on the ground that plaintiffs fail to allege that they purchased the relevant Notes in an initial offering," id. at 1;

- dismissed, with prejudice, plaintiffs' claims under Section 11 of the Securities Act concerning a 2012 note offering "on the ground that such claims are barred by the statute of repose," id. at 1-2;

- dismissed, with prejudice, plaintiffs' Section 11 claims concerning certain purchases "on the ground that plaintiffs failed to plead reliance," id. at 2;

---

[3]    The Appendices to this memorandum set forth the arguments made herein by the Petrobras Defendants (Appendix A) and the Underwriter Defendants (Appendix B) as against the claims alleged against them in the Individual Actions.

- dismissed, with leave to amend, all Securities Act claims "on the ground that plaintiffs failed to allege that they purchased the relevant securities in domestic transactions," id.;

- granted Defendants' motion to compel arbitration "with respect to the Brazilian law claims," id.; and

- otherwise denied the motion, id.

On July 30, the Court issued the MTD Opinion, explaining the reasoning for the rulings in its Bottom-Line Order. See In re Petrobras Sec. Litig., __ F. Supp. 3d __, No. 14-cv-9662 (JSR), 2015 WL 4557364 (S.D.N.Y. July 30, 2015).

## ARGUMENT

For the following reasons, the Aura Capital action should be dismissed in its entirety and the other Individual Actions should be dismissed in significant part.

## I.   CERTAIN INDIVIDUAL PLAINTIFFS HAVE NOT ADEQUATELY PLEADED THAT THEY POSSESS STANDING TO ASSERT ANY CLAIMS

At the motion to dismiss stage, the plaintiff bears the burden of "alleg[ing] facts that affirmatively and plausibly suggest that it has standing to sue." Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011) (affirming dismissal for lack of standing).[4] To establish such standing, "a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." Woods v. Empire Health Choice, Inc., 574 F.3d 92, 96 (2d Cir. 2009) (citing Lujan v. Defenders of Wildlife, 504 U.S.

---

[4]    See also Dimond v. Darden Rests., Inc., No. 13 Civ. 5244 (KPF), 2014 WL 3377105, at *11 (S.D.N.Y. July 9, 2014) ("On a motion to dismiss, it is the burden of the party who seeks standing to sue to allege clearly facts demonstrating that he is a proper party to invoke judicial resolution of the dispute."); Caiafa v. Sea Containers Ltd., 525 F. Supp. 2d 398, 406 (S.D.N.Y. 2007) ("The burden to establish standing rests on the party asserting its existence. At the pleading stage, the plaintiff bears the burden of clearly alleging facts demonstrating that it is a proper party to invoke judicial resolution of the dispute.").

555, 560-61 (1992)).  Here, several Individual Plaintiffs are investment advisors that purchased the relevant Petrobras securities on behalf of others, rather than themselves.  Under controlling Second Circuit authority, these plaintiffs have not demonstrated that they have suffered an injury-in-fact, as required to establish standing.  Their claims must therefore be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

When the value of a stock drops, an investment advisor – who made an investment on behalf of another – does not "suffer[] any injury."  <u>W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP</u>, 549 F.3d 100, 107 (2d Cir. 2008).  "[R]ather, the alleged injury [is] suffered by [the investment advisors'] clients," whose money was actually invested in the securities at issue. <u>Id.</u>  As a result, investment advisors do not have an injury-in-fact and therefore lack standing to assert their clients' claims unless they "can demonstrate an 'injury-in-fact' through some other means, such as an assignment of claims."  <u>Id.</u>

The sole plaintiff in the <u>Aura Capital</u> action does not claim to have suffered any personal injury from investing in Petrobras securities; instead, it states it is an "investment company" that is seeking to sue "on behalf of" two other "related investors . . . who purchased Petrobras ADSs at artificially inflated prices . . . and were damaged when the true facts were revealed."  <u>Aura Capital</u> Compl. ¶ 36.  The only allegation made concerning the named plaintiff's standing is the conclusory assertion that it "has standing and authority to sue Defendants through a valid legal assignment."  <u>Id.</u>  However, that bare assertion – that the plaintiff "has standing" because of "a valid legal assignment" – is a factually bare legal conclusion.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  Indeed, Judge Oetken dismissed a complaint containing similar allegations about an assignment, stating:

> In its Complaint, [plaintiff] alleges "that it is the assignee of the owners of Subordinated Notes ..." and elsewhere "that [it] is assignee from owners of Subordinated Notes with the right to collect 83,120,000." These are the sole allegations concerning the nature of the assignment. They are plainly insufficient to demonstrate standing. Nowhere does the Complaint allege that title to or ownership of the claims has been assigned to [plaintiff]. And indeed, the Complaint does not even allege what was assigned from the Note owners to [plaintiff]. Plainly, the fact that the owner of the Notes assigned something to [plaintiff] is insufficient to confer standing. See Advanced Magnetics, Inc. [v. Bayfront Partners, Inc.], 106 F.3d [11] at 14, 17-18 [(2d Cir. 1997)] (agreement insufficient to confer standing, despite the fact that it purports to be an "assignment").

Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch, No. 12 Civ. 9351 (JPO), 2013 WL 3762882, at *2 (S.D.N.Y. July 18, 2013) ("Cortlandt/DB").[5]

In a related case, the Second Circuit likewise affirmed the dismissal of a complaint on standing grounds – even though the plaintiff there, unlike the plaintiff in Aura Capital, provided a copy of the assignment agreement – because the language of that agreement did "not carr[y the plaintiff's] burden of showing a valid assignment of a claim." Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l., 790 F.3d 411, 418 (2d Cir. 2015) ("Cortlandt/Hellas"). To constitute a "valid assignment," there must have been (prior to the filing of the complaint) "a completed transfer of the entire interest" in the claim. Advanced Magnetics, 106 F.3d at 17. In short, "ownership of the claims," Cortlandt/Hellas, 790 F.3d at 418, must have been transferred; "an

---

[5]     See also Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n, No. 14-cv-10116 (KBF), 2015 WL 2359358, at *2 (S.D.N.Y. May 18, 2015) (rejecting complaint's unsupported conclusion that plaintiffs "bring their claims against Defendants as assignees of claims" because "there are insufficient allegations to support a proper assignment of legal claims"); Amusement Indus., Inc. v. Buchanan Ingersoll & Rooney, P.C., No. 11 Civ. 4416 (LAK)(GWG), 2012 WL 1193353, at *6 (S.D.N.Y. Apr. 10, 2012) (dismissing for lack of standing because there was "simply no indication in the complaint as to the nature of the assignment, what language the assignment contained, or even the date of the assignment"); Franco v. Conn. Gen. Life Ins. Co., 818 F. Supp. 2d 792, 810-11 (D.N.J. 2011) (dismissing complaint where "the assignment allegations amount to no more than recitations of the legal standard" but "fail to plead facts (for example, actual assignment language) to support their legal conclusion that a valid assignment of the proper breadth was given").

assignment will satisfy Article III's standing requirements <u>only</u> if 'the language [of the assignment] manifests [the previous owner's] intention to transfer <u>at least title or ownership</u>, <u>i.e.</u>, to accomplish a completed transfer of <u>the entire interest</u> of the assignor in the particular subject of assignment.'" <u>Cortlandt/DB</u>, 2013 WL 3762882, at *1 (quoting <u>Advanced Magnetics</u>, 106 F.3d at 17) (emphasis in original).  Because the sole named plaintiff in <u>Aura Capital</u> failed to plead facts plausibly alleging that it has received a "valid legal assignment," that action should be dismissed for lack of standing.

Almost all of the plaintiffs in the <u>NN Investment</u> action and certain of the plaintiffs in the <u>Dimensional</u> action must likewise be dismissed because they are only suing on behalf of others and do not allege that they have received an assignment of the relevant claims.  The <u>NN Investment</u> complaint pleads that two of the named plaintiffs – NN Investment Partners B.V. and NN Investment Partners Luxembourg S.A. – "purchased Petrobras Securities during the relevant period" while "acting in the capacity of management company" for various mutual funds.  <u>NN Investment</u> Compl. ¶¶ 17-24.  Indeed, the caption of the complaint states that these plaintiffs are suing "for and on behalf of" the various funds.  However, the complaint does <u>not</u> allege that either of the named plaintiffs suffered a personal financial loss or received an assignment that gave them "ownership" of the claims.  These plaintiffs have therefore failed to adequately plead Article III standing under <u>Huff</u>.  <u>See</u> 549 F.3d at 107.[6]

Similarly, certain plaintiffs in the <u>Dimensional</u> action – DFA Investment Dimensions Group Inc., The DFA Investment Trust Company, DFA Australia Limited, Dimensional Fund

_____

[6]    The only other named plaintiff in the <u>NN Investment</u> action – NN (L) SICAV – is likewise alleged to have made investments "for and on behalf of its Sub-Funds," in addition to making investments while "acting on behalf of itself."  <u>NN Investment</u> Compl. ¶ 24.  For the reasons discussed above, its claims must also be dismissed to the extent they are made on behalf of its Sub-Funds.

Advisors Canada ULC, Dimensional Funds plc and Dimensional Funds ICVC – merely allege that they purchased Petrobras securities "on behalf of" other entities and that those other entities "suffered substantial losses," or that they made the relevant purchases "solely in [their] capacity as responsible entity" or "trustee" for others.  <u>Dimensional</u> Compl. ¶¶ 32-37.  However, the <u>Dimensional</u> complaint does not state that these named plaintiffs suffered individual losses in their own right or received an assignment from those other entities.  Accordingly, these plaintiffs have failed to adequately allege that they – as opposed to the entities on whose behalf they invested – have suffered an injury-in-fact, and their claims must therefore be dismissed.

## II.    THE MTD OPINION REQUIRES DISMISSAL OF SEVERAL CLAIMS IN THE INDIVIDUAL ACTIONS

### A.    None of the Individual Plaintiffs Plead That They Purchased Petrobras Notes in a Domestic Transaction Under <u>Morrison</u>

The Court dismissed all of the Securities Act claims from the Class Action "on the ground that plaintiffs failed to allege that they purchased the relevant securities in domestic transactions."  Bottom-Line Order at 2 (citing <u>Morrison v. Nat'l Austrl. Bank Ltd.</u>, 561 U.S. 247, 273 (2010)).  On the same basis, all of the federal law claims concerning the Petrobras Notes purchased by the Individual Plaintiffs must likewise be dismissed because none of those Individual Plaintiffs adequately allege that they purchased those Notes in domestic transactions.

Five of the Individual Actions – <u>NY Funds</u>, <u>OPERS</u>, <u>Skagen</u>, <u>Transamerica</u> and <u>WSIB</u> – assert claims under the Securities Act and the Exchange Act concerning investments in Petrobras Notes,[7] which are listed but not traded on the New York Stock Exchange and are traded globally

_____

[7]    See <u>NY Funds</u> Compl. Counts IV-VI; <u>OPERS</u> Compl. Counts VIII-X; <u>Skagen</u> Compl. Counts III-V; <u>Transamerica</u> Compl. Counts IV-VI; <u>WSIB</u> Compl. Counts XI-XIII.

over-the-counter.  See Class MTD Reply Br. at 22-23.[8]  The plaintiffs in those actions were

therefore required to plead facts establishing that they purchased those Notes in domestic

transactions, including that "irrevocable liability was incurred or title was transferred within the

United States."  Absolute Activist Value Master Fund, Ltd. v. Ficeto, 677 F.3d 60, 68 (2d Cir.

2012).  Meeting this standard requires allegations "including, but not limited to, facts concerning

the formation of the contracts, the placement of purchase orders, the passing of title, or the

exchange of money," id. at 70, all of which are uniquely within the plaintiffs' knowledge.

    The Individual Complaints fail to satisfy Morrison; none plead the facts Absolute Activist

requires.  This pleading failure is most stark with respect to the plaintiffs in Skagen, who are

themselves foreign entities.  See Skagen Compl. ¶¶ 34-36.  But the same requirement applies to

the remaining Individual Plaintiffs that assert federal claims based on Petrobras Notes –

notwithstanding that they are United States entities – since the mere "citizenship or residency" of

a plaintiff "does not affect where a transaction occurs."  City of Pontiac Policemen's &

Firemen's Ret. Sys. v. UBS AG, 752 F.3d 173, 181 (2d Cir. 2014) ("the fact that [the plaintiff]

was a U.S. entity, does not affect whether the transaction was foreign or domestic").  Indeed,

several of the Individual Plaintiffs based in the United States that purchased Petrobras Notes also

purchased other Petrobras securities outside the United States.  See OPERS Compl. ¶ 11; WSIB

Compl. ¶ 10.

    As a result, all of the Securities Act and Exchange Act claims in the Individual Actions

concerning Petrobras Notes must be dismissed for failure to plead a domestic transaction.[9]

---

[8]    See also Decl. of Roger A. Cooper in Supp. of Defs.' Reply Mem. of Law in Supp. of
Their Mot. to Dismiss the Consol. Am. Compl., dated May 22, 2015, Ex. 4 (Dkt. No. 170-4).

[9]    To the extent any plaintiff purchased ADRs outside of the United States, federal
securities law claims based upon those purchases should be dismissed under Morrison, too.  See

## B. All of the Individual Plaintiffs' Section 12(a)(2) Claims Must Be Dismissed for Lack of Standing

In five of the Individual Actions – <u>NY Funds</u>, <u>OPERS</u>, <u>Skagen</u>, <u>Transamerica</u> and <u>WSIB</u> – plaintiffs bring claims under Section 12(a)(2) of the Securities Act.[10] But under the Court's MTD Opinion, the allegations made by these plaintiffs fail to establish that they possess standing to assert Section 12(a)(2) claims and, accordingly, those claims must be dismissed.

Only purchasers <u>in</u> a public offering of securities, rather than purchasers in the secondary market, have standing to bring Section 12(a)(2) claims. <u>See</u> <u>Gustafson v. Alloyd Co.</u>, 513 U.S. 561, 570, 577 (1995); <u>Pinter v. Dahl</u>, 486 U.S. 622, 644 n.21 (1988); <u>Yung v. Lee</u>, 432 F.3d 142, 148 (2d Cir. 2005). In the MTD Opinion, this Court held the allegation that a plaintiff "purchased the Notes Offerings <u>in or traceable pursuant to</u> the materially false and misleading Offering Documents," CAC ¶ 540 (emphasis added), does not state a Section 12(a)(2) claim because notes "traceable to" an offering may include aftermarket purchases. <u>See</u> Bottom-Line Order at 1; <u>In re Petrobras</u>, 2015 WL 4557364, at *13.[11] The allegations in three of the Individual Complaints are substantially similar and equally deficient:

- <u>NY Funds</u> Compl. ¶ 337 ("Plaintiffs purchased or otherwise acquired 2013 Notes and 2014 Notes pursuant to and/or traceable to the defective 2012 Registration Statement");

---

<u>UBS AG</u>, 752 F.3d at 180 (under <u>Morrison</u>, federal securities laws do not apply to a security listed on a U.S. exchange where the relevant purchase or sale took place outside the U.S.).

[10]    <u>See</u> <u>NY Funds</u> Compl. Count V; <u>Skagen</u> Compl. Count IV; <u>Transamerica</u> Compl. Count V; <u>WSIB</u> Compl. Count XII.

[11]    <u>See also</u> <u>Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.</u>, 714 F. Supp. 2d 475, 484 (S.D.N.Y. 2010) (Rakoff, J.) (rejecting plaintiffs' "coy[]" allegation premising standing on the assertion that putative class members purchased securities "pursuant and/or traceable to" the prospectus); <u>In re Sterling Foster & Co. Sec. Litig.</u>, 222 F. Supp. 2d 216, 246 (E.D.N.Y. 2002) (plaintiffs must "specify at the pleading stage whether they made [the alleged] purchases in the offering or in the secondary market").

- <u>Skagen</u> Compl. ¶ 523 ("Danske Invest Management A/S purchased debt securities issued in or traceable to the Offering"); and

- <u>WSIB</u> Compl. ¶ 543 ("Plaintiff purchased or otherwise acquired U.S. Notes pursuant and/or traceable to the defective 2013 U.S. Notes Registration Statement and 2014 U.S. Notes Registration Statement").

The Section 12(a)(2) claims asserted in these Individual Action must therefore be dismissed.

The <u>OPERS</u> complaint fares no better. Although it alleges that the plaintiff "purchased debt in the [Petrobras Note offerings]," <u>OPERS</u> Compl. ¶¶ 14-15, it later concedes that the plaintiff "holds certain of the 2013 and 2014 Notes purchased in, <u>or traceable to</u> the Offerings," <u>id.</u> ¶ 520 (emphasis added), indicating that it may have purchased some or all of its Petrobras Notes in the secondary market. Further, the plaintiff's transaction history confirms that at least some of its Petrobras Notes purchases were not made "in" the offerings: thirteen of those purchases were made at least three months – and several more than <u>one year</u> – after the offering date, all for prices other than the offering price.[12] The trade data that the plaintiffs in <u>Transamerica</u> have provided reveals that they, too, made many of their purchases well after the offering date, for prices other than the offering price, <u>see</u> Gerber Decl. ¶ 3, contradicting their blanket allegation that they made all of their purchases "in" the respective offerings. <u>Transamerica</u> Compl. ¶ 406. Accordingly, as their transaction histories confirm, the plaintiffs in

---

[12]    <u>See</u> Ex. 1 at 15-20 (OPERS Certification Pursuant to the Federal Securities Laws, <u>In re Petrobras Sec. Litig.</u>, No. 14-cv-9662 (JSR) (S.D.N.Y.) (ECF No. 37-2)); Exs. 2, 3 (excerpts from prospectus supplements for the Petrobras Notes).

From the 2013 Notes Offering, OPERS certifies that it purchased (i) 5,000,000 "Shares" on February 27, 2014; (ii) 4,990,000 "Shares" on February 28, 2014; and (iii) 826,000 "Shares" on June 18, 2014. Ex. 1 at 16-17. From the 2014 Notes Offering, OPERS certifies that it purchased (i) 1,430,000 "Shares" on March 19, 2014; (ii) 1,500,000 "Shares" on August 4, 2014; (iii) 3,043,000 "Shares" on September 8, 2014 (two purchases); (iv) 1,472,000 "Shares" on September 9, 2014; (v) 2,175,000 "Shares" on June 5, 2014; (vi) 3,910,000 "Shares" on November 17, 2014; (vii) 977,000 "Shares" on November 19, 2014; and (viii) 3,963,000 "Shares" on November 20, 2014 (two purchases). <u>Id.</u> at 18-20. None of these purchases were made at the respective offering price. <u>Id.</u> at 16-20; Exs. 2, 3 (excerpts from prospectus supplements for the Petrobras Notes).

OPERS and Transamerica do not have standing to pursue Section 12(a)(2) claims with respect to any of these secondary market purchases.

### C. Certain of the Individual Plaintiffs' Claims Should Be Dismissed to the Extent They Cover Time Periods Beyond the Relevant Statutes of Repose

In the MTD Opinion, the Court dismissed all Securities Act claims concerning a 2012 offering of notes by Petrobras as time-barred under the Securities Act's three-year statute of repose. See In re Petrobras, 2015 WL 4557364, at *14-15. Here, several of the Individual Plaintiffs' claims must similarly be dismissed (or limited to a narrower time period) under the applicable statutes of repose.

Section 10(b) claims are subject to an absolute five-year statute of repose. See 28 U.S.C. § 1658(b); see also Merck & Co. v. Reynolds, 559 U.S. 633, 650 (2010) (referring to five-year period as "an unqualified bar on actions instituted '5 years after such violation'" that gives "defendants total repose"). Therefore, the Section 10(b) and Rule 10b-5 claims asserted in Central States and NN Investment must be dismissed to the extent they cover purchases prior to May 21, 2010, and those asserted in WSIB must be dismissed to the extent they cover purchases prior to June 2, 2010 – five years before those actions were filed. All three complaints plead a "Relevant Period" beginning on April 7, 2009.

Claims under Section 18 of the Exchange Act are further limited by a three-year statute of repose. See 15 U.S.C. §78r(c); see also Dekalb Cnty. Pension Fund v. Transocean Ltd., 36 F. Supp. 3d 279, 284-85 (S.D.N.Y. 2014) ("Section 18 . . . provides a three-year statute of repose."). Therefore, all of the Individual Plaintiffs' Section 18 claims must be dismissed to the extent they concern purchases made more than three years before each action was filed.[13]

---

[13] The following are the latest purchase dates that each Individual Action can assert Section 18 claims under this three-year statute of repose: NY Funds (March 23, 2012); Skagen (March 23, 2012); Transamerica (May 13, 2012); Aberdeen Emerging (May 19, 2012); Central States

Finally, the Illinois common law fraud claims asserted in Central States are subject to a five-year statute of repose. See Klein v. George G. Kerasotes Corp., 500 F.3d 669, 671-74 (7th Cir. 2007) (holding that "five-year period of repose" contained in Illinois Securities Law applied to common law fraud claim concerning sale of stock, even though plaintiff "did not expressly invoke the Securities Law in his complaint," because the provision "applies to all actions for relief under the Securities Law or upon or because of any of the matters for which relief is granted by the Securities Law").[14] Those claims must therefore be dismissed to the extent they involve purchases asserted in Central States before May 21, 2010.

### D.    Certain Section 11 Claims Must Be Dismissed for Failure to Plead Reliance

The MTD Opinion dismissed, with prejudice, all Section 11 claims based on purchases of Petrobras Notes made after Petrobras issued an "earning statement covering a period of at least 12 months beginning after the effective date of the registration statement" because the plaintiffs failed to plead reliance on the alleged misrepresentations in the earlier registration statement, as required by Section 11. In re Petrobras, 2015 WL 4557364, at *15. Here, that holding requires the dismissal of the Section 11 claims in Transamerica and NY Funds as to all purchases of 2013 Notes after August 11, 2014 because neither complaint pleads reliance with respect to the relevant Section 11 claims.[15] To the contrary, both complaints explicitly exclude the paragraphs purporting to allege reliance from those incorporated into the plaintiffs' Section 11 claims.[16]

---

(May 20, 2012); OPERS (May 20, 2012); WSIB (May 21, 2012); Aberdeen Lat. Am. (May 27, 2012); NN Investment (June 2, 2012).

[14]    In resolving this issue, the Court need not decide whether Illinois or New York substantive law applies to the fraud claims asserted in Central States because, even if New York substantive law applies, New York's borrowing statute would still require the fraud claims to be timely under the applicable Illinois limitations periods. See N.Y. C.P.L.R. § 202.

[15]    By letters dated July 13, 2015, Defendants requested trading information from all Individual Plaintiffs with Section 11 claims based on 2013 Notes in order to assess whether this aspect of the Court's MTD Opinion was applicable. See Gerber Decl. ¶ 3. By email dated July

### E. Certain Brazilian Law Claims Must Be Arbitrated

The MTD Opinion also compelled arbitration of USS's Brazilian law claims in light of

Petrobras's arbitration by-law, see In re Petrobras, 2015 WL 4557364, at *15-17; see also Class

MTD Br. at 55-59.  Here, plaintiffs in three Individual Actions – NN Investment, OPERS and

WSIB – purchased Petrobras shares on the BOVESPA and assert claims under Brazilian law.

See NN Investment Compl. ¶ 10, Counts VI-VII; OPERS Compl. ¶ 11, Counts IV-VII; WSIB

Compl. ¶ 10, Counts VIII-X.  Therefore, as this Court has explained, the Brazilian law claims in

these actions must be arbitrated to the extent they concern shares purchased by those plaintiffs on

the BOVESPA.

### III. ALL CLAIMS UNDER SECTION 18 OF THE EXCHANGE ACT MUST BE DISMISSED FOR FAILURE TO PLEAD EYEBALL RELIANCE

Unlike a Section 10(b) claim, a Section 18 claim requires actual – rather than

constructive – reliance upon a statement (contained in a document filed pursuant to the Exchange

Act) by one who has purchased or sold a security.  See Heit v. Weitzen, 402 F.2d 909, 916 (2d

Cir. 1968) (actual reliance "is an essential prerequisite for a Section 18 action and constructive

notice is not sufficient").  Thus, to state a claim under Section 18, a plaintiff must allege "eyeball

reliance," meaning that it actually read and relied on the filed document.  See In re Alstom SA,

406 F. Supp. 2d 433, 479 (S.D.N.Y. 2005).

To adequately plead eyeball reliance under Section 18, a plaintiff must do more than

make conclusory allegations of actual reliance on Exchange Act-filed documents containing

allegedly false statements.  See Int'l Fund Mgmt. S.A. v. Citigroup Inc., 822 F. Supp. 2d 368,

---

30, 2015, the Transamerica plaintiffs provided the relevant records, which showed that many of
the purchases fell into this category.  Id.  The plaintiffs in NY Funds said they would provide
such records but never did.  Id.

[16]     See Transamerica Compl. ¶ 390 (excluding reliance allegations from list of paragraphs
incorporated into Section 11 claims); NY Funds Compl. ¶ 319 (same).

386 (S.D.N.Y. 2011). "Plaintiffs must allege that they personally read specific actionable misstatements in [] filings covered by Section 18, and then purchased or sold securities in reliance on those misstatements." In re Marsh & McLennan Cos. Sec. Litig., 501 F. Supp. 2d 452, 493 (S.D.N.Y. 2006).[17] This requires a plaintiff to identify the specific statements in the specific documents that it relied on to make specific purchases. See In re Bear Stearns Cos. Secs., Derivative, & ERISA Litig., 995 F. Supp. 2d 291, 309 (S.D.N.Y. 2014) (dismissing claim where the plaintiff did "not link its review of any particular statements in that document or any other document to any actual purchases of Bear Stearns securities and does not identify a particular transaction that it allegedly made in reliance on the document or any other document").

Thus, Judge Sweet held inadequate the "generic" allegation that "'every . . . purchase of Bear securities was in reliance on the specific misrepresentations and omissions identified in the Complaint.'" Id. at 309 (citation omitted); see also Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd., 33 F. Supp. 3d 401, 445 (S.D.N.Y. 2014) (dismissing Section 18 claim where complaint failed "to causally link specific statements by [defendant] to [plaintiffs'] purchase of [the issuer's] stock"). Further, the eyeball reliance pleading requirement also requires that, for each purchase, the plaintiff specify how it relied on the specific misstatement in making that particular purchase. See Special Situations Fund, 33 F. Supp. 3d at 445 ("While Plaintiffs attempt to characterize the cases . . . as solely requiring plaintiffs to

---

[17]     See also In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 284 (3d Cir. 2006) ("[A] plaintiff seeking to bring a claim under Section 18 must allege a causal nexus between the sale of a security and reliance upon a false statement in a report filed with the SEC.").

specifically identify the statements on which they relied, as explained <u>supra</u>, more is required, such as allegations of how plaintiffs relied.").[18]

None of the Individual Complaints asserting Section 18 claims adequately plead eyeball reliance under this standard. None specifically link any particular transaction to any specific misstatement, <u>see</u> <u>In re Bear Stearns</u>, 995 F. Supp. 2d at 309; <u>Int'l Fund Mgmt.</u>, 822 F. Supp. 2d at 368, nor do any allege <u>how</u> any plaintiff relied on any alleged misstatement in executing any transaction, <u>see</u> <u>Special Situations Fund III</u>, 33 F. Supp. 3d at 445; <u>Int'l Fund Mgmt.</u>, 822 F. Supp. 2d at 368. Instead, each alleges dozens of purchases of Petrobras securities spanning many years – regardless of the proximity of those purchases to the alleged misstatements on which the plaintiffs purportedly relied[19] – and only contain the type of blanket, conclusory assertions of reliance that are insufficient as a matter of law:

- <u>Aberdeen Emerging</u> Compl. ¶¶ 458-61; <u>Aberdeen Lat. Am.</u> Compl. ¶¶ 458-61; <u>Skagen</u> Compl. ¶¶ 457-60 (alleging that plaintiffs "directly relied upon the information publicly disclosed by Petrobras in the Forms 20-F" on certain topics and that these statements "had a material influence on, and were a substantial factor in bringing, about [plaintiffs'] investment decisions");

---

[18]     <u>See also</u> <u>Int'l Fund Mgmt.</u>, 822 F. Supp. 2d at 386 (dismissing claim where complaint "lack[ed] supporting factual matter indicating how plaintiffs relied on the alleged misrepresentations"); <u>Kelley v. Rambus, Inc.</u>, No. C 07-1238 JF (HRL), 2008 WL 5170598, at *15 (N.D. Cal. Dec. 9, 2008), <u>aff'd</u>, 384 F. App'x 570 (9th Cir. 2010) (dismissing Section 18 claims because "Plaintiffs do not allege when they read any of these documents, or whether and how they relied on them in any way in the sale or purchase of a security").

[19]     Moreover, the reliance allegations are also implausible. The Individual Plaintiffs generally allege that they relied on Petrobras's Forms 20-F in connection with <u>all</u> of their purchases, even when one or more Forms 6-K (for which there is no Section 18 liability) containing more recent financial information was filed before the date of a specific purchase. For example, the <u>Aberdeen Emerging</u> complaint asserts Section 18 claims concerning Petrobras's 2012 Form 20-F, which was issued on April 29, 2013, for purchases as late as April 25, 2014 (nearly a year later), even though: (1) Petrobras issued at least seven Forms 6-K with updated financial information in the interim; and (2) the complaint otherwise alleges that the plaintiffs relied on Petrobras's Forms 6-K and utilized "intensive and ongoing scrutiny" of the companies in which they invested. <u>Aberdeen Emerging</u> Compl. ¶¶ 297, 456-57, App. A.

- <u>Central States</u> Compl. ¶¶ 415-17; <u>NN Investment</u> Compl. ¶¶ 383-85; <u>WSIB</u> Compl. ¶¶ 444-46 (alleging that "Plaintiff's investment managers directly relied upon the information publicly disclosed by Petrobras" on certain topics and that these statements "had a material influence on [plaintiffs'] investment in Petrobras Securities");

- <u>NY Funds</u> Compl. ¶ 284; <u>Transamerica</u> Compl. ¶ 350 (alleging that "Plaintiffs and/or their agents relied upon Defendants' representations and assurances regarding" certain topics, "Plaintiffs and/or their agents received, reviewed, and relied upon Defendants' misrepresentations and omissions," and "[d]ocuments and SEC filings containing the representations . . . were obtained, reviewed, and relied upon before any purchase was made");

- <u>OPERS</u> Compl. ¶ 360 (alleging "Plaintiff also reviewed and relied upon the accuracy of Petrobras financial statements in" five Forms 20-F and sixteen Forms 6-K).

Courts have routinely rejected nearly identical allegations as insufficient to plead eyeball reliance under Section 18. For example, Judge Stein recently held:

> Plaintiffs allege only that "[i]n connection with [their] purchases of Securities after February 23, 2007, Plaintiffs and/or their investment managers read and relied upon [the issuer's] 2006 Form 10-K, including the false financial statements and other statements alleged herein to be false or misleading." . . . These allegations do not meet the threshold requirement that a complaint "set forth enough facts to state a claim to relief that is plausible on its face" as explained in <u>Twombly</u> and <u>Iqbal</u>. They are conclusory. They are incredibly broad, alleging reliance on entire 10-Ks for indefinite periods of time. And they lack supporting factual matter indicating how plaintiffs relied on the alleged misrepresentations. The Court can only conclude that plaintiffs have not met their pleading burden.

<u>Int'l Fund Mgmt.</u>, 822 F. Supp. 2d at 368. Even more detailed allegations are indadequate.[20]

The allegations of eyeball reliance set forth in the complaints here are therefore insufficient and all of the asserted Section 18 claims must be dismissed.

---

[20]    <u>In re Enron Corp. Secs., Derivative & ERISA Litig.</u>, 540 F. Supp. 2d 800, 830 (S.D. Tex. 2007) (allegations that plaintiffs and their agents "specifically read and relied on the false and misleading statements of the Company's financial condition" and its allegedly false "financial statements" were "not sufficient" because "Plaintiffs need to make specific factual allegations describing each Plaintiff's reliance on the statements in these documents and allege a causal connection between the statements and that Plaintiff's purchase").

Finally, the Section 18 claims independently fail to the extent they challenge any statements outside of Petrobras's Forms 20-F. Section 18 only applies to documents filed pursuant to the Exchange Act – such as Forms 10-K and 20-F – and does not apply to oral statements, press releases, or other filings made solely under the Securities Act or another securities law. See Alstom, 406 F. Supp. 2d at 479. Moreover, and most notably for present purposes, Section 18 does not apply to filings of Registration Statements (including on Forms F-3) or Prospectus Supplements, which are filed under the Securities Act, or to Forms 6-K. Id. at 481-82. As a result, all of the Individual Plaintiffs' Section 18 claims must be dismissed to the extent they are based on any statements not contained in Petrobras's Forms 20-F.[21]

## IV.  CERTAIN INDIVIDUAL PLAINTIFFS' NON-FEDERAL CLAIMS ARE PRECLUDED BY SLUSA

The non-federal claims asserted in Central States and NN Investment must also be dismissed because they are precluded by SLUSA. Under SLUSA, no action may be maintained that: "(1) is a 'covered' class action (2) based on state statutory or common law that (3) alleges that defendants made a 'misrepresentation or omission of a material fact' or 'used or employed any manipulative device or contrivance in connection with the purchase or sale' (4) of a covered security." Romano v. Kazacos, 609 F.3d 512, 518 (2d Cir. 2010) (quoting 15 U.S.C. § 78bb(f)). Each of these requirements is met here.

The last three of these requirements are clearly satisfied on the face of the Central States and NN Investment complaints:

- Both complaints assert claims based on state statutory or common law;[22]

---

[21]  See, e.g., OPERS Compl. ¶ 360 (alleging plaintiff relied on Petrobras's Forms 6-K).

[22]  See Central States Compl. Count IV (Illinois common law fraud claim); NN Investment Compl. Counts IV-V (common law fraudulent inducement and concealment claims).

- Both allege that Petrobras made misrepresentations or omissions, or engaged in intentional fraud, in connection with the purchase or sale of securities;[23] and

- The securities at issue qualify as "covered securities" under SLUSA because they were "listed, or authorized for listing, on the New York Stock Exchange" or were "a security of the same issuer that is equal in seniority or that is a senior security" to a security listed on the New York Stock Exchange. 15 U.S.C. §§ 77r(b)(1)(A), 77r(b)(1)(C).[24]

Therefore, the only remaining question is whether the <u>Central States</u> and <u>NN Investment</u> actions are part of a "covered class action" for SLUSA purposes. Under the plain text of SLUSA, they unquestionably are.

SLUSA broadly defines the term "covered class action" to include not only traditional class actions, but also "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which – (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit</u>, 547 U.S. 71, 83 n.8 (2006) (quoting 15 U.S.C. § 78bb(f)(5)(B)). Here, all of these requirements are met. <u>First</u>, the consolidated Petrobras securities litigations include eleven Individual Actions that collectively name more than 100 separate plaintiffs, as well as the Class Action. <u>Second</u>, all of these lawsuits

---

[23]  See, e.g., <u>Central States</u> Compl. ¶¶ 437-38 (alleging defendants "intentionally made false statements of material fact," which they "knew" "would induce Plaintiff to act" and "Plaintiff was induced to and did act . . . including purchasing Petrobras Securities"); <u>NN Investment</u> Compl. ¶ 405 (alleging defendants "fraudulently induced Plaintiff to purchase Petrobras Securities by: (i) employing devices, schemes, and artifices to defraud; (ii) making untrue statements of material facts or omitting to state material facts"); <u>id.</u> ¶¶ 411-12 (alleging defendants "intentionally concealed or suppressed material facts necessary in order to make the statements made . . . not misleading" and that "Plaintiffs would not have purchased Petrobras Securities at the prices it paid, or at all, if they had known of the concealed or suppressed facts").

[24]  See <u>Central States</u> Compl. ¶ 10 (defining "Petrobras Securities" as common ADRs and preferred ADRs "which are traded on the NYSE"); <u>NN Investment</u> Compl. ¶ 10 (including in definition of "Petrobras Securities" common ADRs and preferred ADRs "which are traded on the NYSE," as well as common and preferred shares of the company listed on the "Sao Paulo Stock Exchange," which are of equal priority).

are pending "in the same court" and involve "common questions of law or fact" concerning alleged wrongdoing in connection with offerings of Petrobras securities.[25]  Third, both Central States and NN Investment are "consolidated" with the Class Action (and the other Individual Actions) "for pre-trial purposes."  Dkt. No. 105 at 2.  Such consolidation for pre-trial purposes qualifies as being "consolidated . . . for any purpose" under SLUSA, as many courts have held.[26]

Further, while SLUSA exempts certain governmental entities from its ambit, 15 U.S.C. § 77p(d)(2)(A), the plaintiffs in Central States and NN Investment do not qualify for this exemption.  The plaintiff in Central States is not a government entity; rather, it is a private, "multi-employer, collectively bargained pension fund."  Central States Compl. ¶ 17.  Similarly, the plaintiffs in NN Investment are private, mutual fund management companies.  See NN Investment Compl. ¶¶ 17-25.  As a result, none of the plaintiffs in the Central States and NN Investment actions is a "state" actor, and their state law claims do not fall under the narrow SLUSA exception for such entities.  Thus, all of the elements of SLUSA preclusion are met here and the state law claims asserted in Central States and NN Investment must be dismissed.

Finally, while the Brazilian law claims asserted in the Individual Actions should be dismissed because (as discussed below) those claims do not apply to securities not traded in Brazil, they should also be dismissed under SLUSA.  SLUSA preemption extends not only to the U.S. state law claims asserted in Central States and NN Investment, but also to the Brazilian law

---

[25]  See, e.g., Consolidation Order at 2 (consolidating cases that "relate to the same subject matter" as the class action); Central States, Related Case Statement at 2 (listing Class Action as related and stating, "[t]his case and the earlier filed action concern the same or substantially similar parties, transactions or events, [and] there is substantial factual overlap"); NN Investment, Civil Cover Sheet (listing Class Action as related).

[26]  See, e.g., In re Lehman Bros. Sec. & ERISA Litig., No. 09 MD 2017 (LAK), 2012 WL 6603321, at *1-3 & n.6 (S.D.N.Y. Dec. 17, 2012) (collecting cases holding that consolidation for pre-trial purposes is sufficient to trigger application of SLUSA preclusion); see also In re Refco Inc. Sec. Litig., 859 F. Supp. 2d 644, 649 (S.D.N.Y. 2012) (Rakoff, J.) ("'For any purpose' is about as broad a provision as Congress could draft.").

claims in those actions.  See LaSala v. Lloyds TSB Bank, PLC, 514 F. Supp. 2d 447, 471-72

(S.D.N.Y. 2007) (Haight, J.) (holding SLUSA precluded claims brought under Swiss law).[27]  As

such, both the state law claims and foreign law claims asserted in the Central States and NN

Investment actions must be dismissed.

## V.　　THE SECTION 12(A)(2) CLAIMS MUST ALSO BE DISMISSED BECAUSE THE DEFENDANTS WERE NOT "STATUTORY SELLERS"

Under Section 12(a)(2) of the Securities Act, plaintiffs may bring suit only against

"statutory sellers," a term that the Supreme Court has limited to those who have either

"(i) 'passed title, or other interest in the security, to the buyer for value,' or (ii) 'successfully

solicit[ed] the purchase.'"  In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 359 (2d

Cir. 2010) (quoting Pinter, 486 U.S. at 642, 647).  Significantly, Section 12(a)(2) "imposes

liability on only the buyer's immediate seller; remote purchasers are precluded from bringing

actions against remote sellers."  DeMaria v. Andersen, 153 F. Supp. 2d 300, 307-08 (S.D.N.Y.

2001), aff'd, 318 F.3d 170 (2d Cir. 2003) (quoting Pinter, 486 U.S. at 644 n.21).

---

[27]　　SLUSA does not independently define "State," so the definition for that term is supplied by the Exchange Act's general definitions.  There, "State" is defined to be a "State of the United States" except "where the context otherwise requires."  15 U.S.C. § 78c(a).  A few cases have held that SLUSA does not apply to foreign law claims, but none even mention the statute's direction to consider the context when defining "State."  And, the context clearly does otherwise require here:  SLUSA's explicit purpose was to "mak[e] federal court the exclusive venue for class actions alleging fraud in the sale of certain covered securities" and to "mandat[e] that such class actions be governed exclusively by federal law."  Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 108 (2d Cir. 2001) (emphasis added).  Therefore, interpreting SLUSA as applying only to claims asserted under the laws of the states of the United States – and not to claims asserted under the laws of foreign states – would be inimical to SLUSA's purpose.  See LaSala, 514 F. Supp. 2d at 472 (treating "Swiss law as state law for purposes of SLUSA" because not doing so would "frustrate[]" the congressional purpose of the statute); LaSala v. UBS, AG, 510 F. Supp. 2d 213, 238 (S.D.N.Y. 2007) (same); but see Mem. & Order, In re BP p.l.c. Sec. Litig., MDL No. 10-md-2185 (S.D. Tex. Sept. 30, 2014), ECF No. 1022 at 19 (finding foreign law not subject to SLUSA, but noting that "[d]efendants may indeed be correct that SLUSA should preclude foreign law claims" and "[t]his may indeed be a loophole which threatens the vitality of SLUSA").

None of the Plaintiffs that assert Section 12(a)(2) claims has pleaded facts demonstrating that any of the Defendants was a "statutory seller."

A.     **Plaintiffs Fail to Allege that Any Underwriter Defendant Is a "Statutory Seller"**

The Individual Plaintiffs fail to allege that any of the Underwriter Defendants is a "statutory seller" under Section 12(a)(2).  First, the plaintiffs in NY Funds, OPERS, Transamerica and WSIB do not allege that any Underwriter Defendant "passed title" to the Petrobras Notes to those Individual Plaintiffs.  In fact, the pleadings in the NY Funds, Transamerica and WSIB Actions do not allege any transaction with any Defendant.  See NY Funds Compl. ¶ 337; Skagen Compl. ¶¶ 520-23; Transamerica Compl. ¶ 406; WSIB Compl. ¶ 543.  "Instead, rather coyly," the complaints in NY Funds, Transamerica and WSIB allege only that they "purchased or otherwise acquired [the Petrobras Notes] pursuant to and/or traceable to [the registration statements]."  Pub. Emps.' Ret. Sys. of Miss., 714 F. Supp. 2d at 484 (emphasis added).  "Even under the modest requirements of Rule 8(a) of the Federal Rules of Civil Procedure, [these allegations are] insufficient to allege standing for purposes of a Section 12(a)(2) claim." Id. (citations omitted).  As for OPERS, while the plaintiff in that action does claim to have "purchased certain of the 2013 and 2014 Notes from the Underwriter Defendants," OPERS Compl. ¶ 519, it fails to identify, as it must, the specific Underwriter Defendants with whom it transacted.  See In re Merrill Lynch & Co. Research Reports Sec. Litig., 272 F. Supp. 2d 243, 255 (S.D.N.Y. 2003) (Pollack, J.) (Section 12(a)(2) claim "fails because plaintiff has not sufficiently alleged that she purchased the mutual fund shares directly from any of the Defendants").  The same holds true for the other complaints, as well:  none even attempt to specify which among the "Underwriter Defendants" sold Petrobras Notes in the offerings, much less to whom these Underwriter Defendants sold.

**Second**, the plaintiffs in <u>NY Funds</u>, <u>OPERS</u>, <u>Transamerica</u> and <u>WSIB</u> do not allege that

any Underwriter Defendant "was directly involved in the actual solicitation of [their]

purchase[s]." <u>Griffin v. PaineWebber, Inc.</u>, No. 99 Civ. 2292 (VM), 2001 WL 740764, at *2

(S.D.N.Y. June 29, 2001). The <u>NY Funds</u> complaint lacks any allegations related to solicitation

whatsoever. <u>See generally</u> <u>NY Funds</u> Compl. and Count V. And the <u>OPERS</u>, <u>Transamerica</u> and

<u>WSIB</u> complaints allege, at best,[28] only that the named Defendants "were . . . solicitors . . .

pursuant to" the registration statements, <u>Transamerica</u> Compl. ¶ 405, or took "actions of

solicitation" by "participating in the preparation and dissemination of the [registration

statements]," <u>OPERS</u> Compl. ¶ 517; <u>WSIB</u> Compl. ¶ 541. These conclusory allegations fail to

raise a plausible inference that any of the Underwriter Defendants actively solicited Plaintiffs, let

alone that Plaintiffs purchased Petrobras Notes as a direct result of those solicitation efforts.[29]

## B. The Petrobras Defendants Were Not "Statutory Sellers"

For the reasons previously advanced in the Motion to Dismiss the CAC, because the

Petrobras Notes were sold in "firm commitment" underwritings, and therefore neither Petrobras

nor PGF actually sold any Petrobras Notes to any plaintiff, Petrobras and PGF are not "statutory

sellers" under Section 12(a)(2). <u>See</u> Class MTD Br. at 39-40. As the Petrobras Defendants

noted, several recent opinions have held that an issuer is not a statutory seller in a firm

commitment offering. <u>See</u> Class MTD Reply Br. at 17 & n.25. In addition, neither Petrobras nor

---

[28]    The <u>Transamerica</u> complaint alleges only that "the Underwriter Defendants were sellers, offerors, <u>and/or</u> solicitors of sales of the Notes." <u>Transamerica</u> Compl. ¶ 405.

[29]    <u>See</u> <u>In re UBS AG Sec. Litig.</u>, No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *26 (S.D.N.Y. Sept. 28, 2012) (allegation that defendants "'solicited . . . purchases for their personal gain through . . . the preparation and dissemination of the Prospectus Supplemental'" insufficient), <u>aff'd sub nom</u>, <u>City of Pontiac</u>, 752 F.3d 173; <u>DeMaria</u>, 153 F. Supp. 2d at 307 (no solicitation where "no allegations that any defendant actively solicited any named plaintiff in connection with the sale"); <u>Shain v. Duff & Phelps Credit Rating Co.</u>, 915 F. Supp. 575, 577 (S.D.N.Y. 1996) ("persons are not liable under § 12 for solicitation unless they directly or personally solicit the buyer").

PGF is alleged to have actively solicited purchases made by any Individual Plaintiffs.  See Class MTD Br. at 40 & n.41.  The Court did not specifically discuss these arguments in the MTD Opinion, but Petrobras and PGF understand that the Court did not accept them.  See In re Petrobras, 2015 WL 4557364, at *13 n.6.

## VI.    WSIB'S NEGLIGENT MISREPRESENTATION CLAIMS SHOULD BE DISMISSED

### A.    New York Law Governs the Negligent Misrepresentation Claim in WSIB

The plaintiff in WSIB alleges that its negligent misrepresentation claim is governed by the laws of Washington State[30] (see WSIB Compl. ¶¶ 10, 483), but New York law should apply. Federal courts exercising supplemental jurisdiction over a party's state law claims must apply the choice of law rules of the forum state.  Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989).

"In a tort law case, New York uses an 'interests analysis' to determine which law governs, applying the 'law of the jurisdiction with the most significant interest in, or relationship to, the dispute.'"  In re Refco Inc. Sec. Litig., 892 F. Supp. 2d 534, 537 (S.D.N.Y. 2012) (Rakoff, J.) (quoting White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006)). In applying this interest analysis to negligent misrepresentation claims, courts have "focused on the place where the fraud was centered and where misrepresentations were made," AHW Inv. P'ship v. Citigroup Inc., 980 F. Supp. 2d 510, 523-24 (S.D.N.Y. 2013) (citing cases), rather than where the plaintiff incurred loss, see id., or where the defendants resided, see Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP, 612 F. Supp. 2d 267, 283 (S.D.N.Y. 2009) (applying New York law where defendants registered and headquartered elsewhere).

---

[30]    Notably, elsewhere the WSIB complaint alleges that "'New York law governs the . . . debt securities'" pursuant to the "registration statement."  WSIB Compl. ¶ 13.

Here, the WSIB complaint alleges that "[t]he acts and conduct complained of herein occurred in substantial part in [the Southern] District [of New York], [Petrobras's] ADRs trade on the NYSE, which is located in this District, [and] Petrobras Debt Securities were marketed here [in New York] and sold here and trade on an exchange located in this District[.]" WSIB Compl. ¶ 13. In short, "the complaint . . . establishes that the overwhelming bulk of events surrounding the alleged negligent misrepresentation and the underlying fraud occurred in New York." Thomas H. Lee, 612 F. Supp. 2d at 284. Because the alleged conduct "was centered" in New York, the laws of this State govern the negligent misrepresentation claim in WSIB, particularly given New York's strong "interest in regulating its vast securities industry." AHW, 980 F. Supp. 2d at 523-24.[31]

## B. WSIB Does Not State a Claim for Negligent Misrepresentation

To state a claim for negligent misrepresentation under New York law, a plaintiff must allege that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." Barron Partners, LP v. Lab123, Inc., 593 F. Supp. 2d 667, 674-75 (S.D.N.Y. 2009) (Rakoff, J.) (quoting Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 20 (2d Cir. 2000)). "[C]laims for negligent misrepresentation

---

[31] Applying the law of the jurisdiction where the plaintiff suffered loss – presumably Washington in this case – could subject defendants "to liability pursuant to the laws of all fifty states and an unknown number of foreign nations." AHW, 980 F. Supp. 2d at 524. Indeed, under that standard Defendants would be subject to the laws of at least nine jurisdictions in these Actions alone. See NY Funds Compl. ¶ 25; OPERS Compl. ¶ 18; Skagen Compl. ¶¶ 24-41; Transamerica Compl. ¶¶ 41-53; WSIB Compl. ¶ 17. "That approach would paralyze actors in the securities markets, not regulate their conduct." AHW, 980 F. Supp. 2d at 523-24.

[must be pleaded] with particularity under Rule 9(b)." <u>CAC Grp., Inc. v. Maxim Grp., LLC</u>, No. 12 Civ. 5901 (KBF), 2012 WL 4857518, at *5 (S.D.N.Y. Oct. 10, 2012) (citing <u>Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.</u>, 404 F.3d 566, 583 (2d Cir. 2005)), <u>aff'd</u>, 523 F. App'x 802 (2d Cir. 2013).

The negligent misrepresentation claim in <u>WSIB</u> fails to meet these threshold pleading requirements in several respects. <u>First</u>, the <u>WSIB</u> complaint does not allege a "special relationship" between the plaintiff and any Defendant. "[A] special relationship exists where defendants 'possess unique or specialized expertise' or 'are in a special position of confidence and trust with the injured party.'" <u>Phillips v. Am. Int'l Grp., Inc.</u>, 498 F. Supp. 2d 690, 698 (S.D.N.Y. 2007) (Rakoff, J.) (quoting <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 788 (2d Cir. 2003)). "Generally, a special relationship does not arise out of an ordinary arm's length business transaction between two parties." <u>Flaherty Funding Corp. v. Johnson</u>, 105 A.D.3d 1445, 1446 (N.Y. App. Div., 4th Dep't 2013). In this case, the <u>WSIB</u> complaint has alleged, at most, arm's length transactions in Petrobras securities with certain Defendants (<u>see, e.g.</u>, <u>WSIB</u> Compl. ¶¶ 540-41) – transactions that cannot, as a matter of law, create a "special relationship" sufficient to sustain a negligent misrepresentation claim.[32]

<u>Second</u>, the <u>WSIB</u> complaint fails to meet the heightened pleading requirements of Rule 9(b). For example, it alleges only that "[t]he Negligent Defendants," without specifying <u>which Defendants</u>, "made material false statements [and omissions]." <u>WSIB</u> Compl. ¶ 473. But

---

[32]    <u>See</u> <u>Deutsche Zentral-Genossenschaftsbank AG v. HSBC N. Am. Holdings, Inc.</u>, No. 12 Civ. 4025 (AT), 2013 WL 6667601, at *16 (S.D.N.Y. Dec. 17, 2013) (no special relationship where "parties are sophisticated and the sale [of securities] was an arm's length transaction"); <u>Phillips</u>, 498 F. Supp. 2d at 698 (no special relationship where complaint failed to allege "any facts suggesting that the relationship between plaintiff and defendants was anything other than arm's-length"); <u>Flaherty</u>, 105 A.D.3d at 1446 (no special relationship between underwriter and investor in "arm's length business transaction").

"[w]hen a claim is brought against multiple defendants, Rule 9(b) requires that a plaintiff differentiate his allegations as to each defendant and inform each defendant separately of the specific allegations." Golden Archer Invs., LLC v. Skynet Fin. Sys., No. 11 Civ. 3673 (RJS), 2012 WL 123989, at *8 (S.D.N.Y. Jan. 3, 2012).[33]

Third, the WSIB complaint fails to adequately plead actual reliance. "[T]o obtain any kind of relief for a negligent misrepresentation, it is essential for the plaintiff to show reliance upon it." Rotanelli v. Madden, 172 A.D.2d 815, 816 (N.Y. App. Div., 2d Dep't 1991). The WSIB complaint, however, makes only the conclusory allegations that the plaintiff "reasonably relied on the Negligent Defendants' omissions and misstatements" and "relied upon . . . statements made by or authorized by the Negligent Defendants." WSIB Compl. ¶ 482; see also id. ¶ 444. These "summary form" allegations "run[] afoul of Rule 9(b)" because they do not "particulariz[e] who, on behalf of [WSIB], in fact read and relied on the [alleged] statement[s]." Devaney v. Chester, 709 F. Supp. 1255, 1264 (S.D.N.Y. 1989); see also Gross v. Diversified Mortg. Investors, 431 F. Supp. 1080, 1091 (S.D.N.Y. 1977), aff'd, 636 F.2d 1201 (2d Cir. 1980) ("Plaintiff should plead with particularity the circumstances of his reliance"). And although the WSIB complaint purports to "rel[y] on the presumption of reliance to the extent available to it," WSIB Compl. ¶ 482, "the fraud-on-the-market theory is unavailable" to plaintiffs asserting New York common law claims. In re Pfizer Inc. Sec. Litig., 584 F. Supp. 2d 621, 643 (S.D.N.Y. 2008)

---

[33]     See also Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); In re Crude Oil Commodity Litig., No. 06 Civ. 6677 (NRB), 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007) ("'complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement'") (citation omitted); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young, No. 91 Civ. 2923 (CSH), 1994 WL 88129, at *7 (S.D.N.Y. Mar. 15, 1994) ("Sweeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b).").

(citing cases); see also Int'l Fund Mgmt., 822 F. Supp. 2d at 387 ("The requisite reliance is actual reliance, not the presumed reliance of a Section 10(b) action.").

Lastly, there is an independent reason for dismissing the negligent misrepresentation claim as against the Underwriter Defendants. As this Court has held, "liability [for fraud or negligent misrepresentation] only lies if a party 'makes,' 'authorizes,' or 'causes' a false statement to be made." Dexia SA/NV v. Deutsche Bank AG, Nos. 11 Civ. 5672 (JSR), 11 Civ. 6141 (JSR), 2013 WL 98063, at *7 (S.D.N.Y. Jan. 4, 2013) (expressing skepticism as to whether underwriter defendants had "made" any misrepresentations in connection with securities offerings for purposes of negligent misrepresentation claim). In this case, however, the WSIB complaint does not even purport to allege any misrepresentation or omission made or authorized by any of the Underwriter Defendants, thereby mandating dismissal. See WSIB Compl. ¶¶ 50-63, 204-416, 472-84.[34]

## VII. ALL OF THE INDIVIDUAL PLAINTIFFS' BRAZILIAN LAW CLAIMS BASED ON NON-BOVESPA-TRADED SHARES SHOULD BE DISMISSED

The Central States, NN Investment and WSIB complaints assert claims under the Brazilian Statutes based upon plaintiffs' alleged purchases of Petrobras securities that are not

---

[34] The negligent misrepresentation claim in the WSIB complaint would be fatally defective even if Washington law applied (and it does not). Washington, like New York, imposes a "duty to disclose" giving rise to liability for negligent misrepresentation only where there is "[s]ome type of special relationship" between the parties. See Colonial Imps. v. Carlton N.W., Inc., 121 Wash. 2d 726, 732 (Wash. 1993) (plaintiff must plead "quasi-fiduciary relationship," i.e., "where a special relationship of trust and confidence has been developed between the parties, where one party is relying upon the superior specialized knowledge and experience of the other, where a seller has knowledge of a material fact not easily discoverable by the buyer, [or] where there exists a statutory duty to disclose"). Moreover, under Washington law, as under New York law, "reliance is a critical element" of a negligent misrepresentation claim. BP W. Coast Prods. LLC v. SKR Inc., 989 F. Supp. 2d 1109, 1120 (W.D. Wash. 2013) (citing Lawyers Title Ins. Corp. v. Soon J. Baik, 147 Wash. 2d 536, 545 (2002)). Because the WSIB complaint has pleaded neither a special relationship nor actual reliance, it does not state a claim for negligent misrepresentation under Washington law.

traded on the BOVESPA. <u>See</u> Ex. 4 (Report of Luiz Cantidiano) ¶¶ 8-13.[35]  Those statutes are inapplicable to plaintiffs' claims.

<u>First</u>, under Brazilian choice-of-law principles, the laws of the United States and/or its constituent states, not Brazilian law, would govern plaintiffs' claims regarding their Petrobras securities registered and offered in the United States and which plaintiff do not contend they purchased in Brazil. <u>See</u> Ex. 5 (Report of Paulo Casella) ¶¶ 14-23.  Brazil's choice-of-law statute requires application of the law of the place where obligations are "constituted" to claims concerning those obligations, <u>id.</u> ¶¶ 17-18, and applies to the obligations between a corporation and security-holder that stem from the corporation's offer and sale of securities and a purchaser's acquisition of those securities. <u>Id.</u> ¶¶ 19.  Here, plaintiffs' claims relating to their Petrobras ADRs or Petrobras Notes involve obligations associated with the offering and sale of such securities, which occurred pursuant to the filing of offering documents with the SEC, which plaintiffs allege to have been misleading. <u>Id.</u> ¶¶ 20-22.  Accordingly, as a matter of Brazilian law, the obligations involving the Petrobras ADRs and Petrobras Notes were "constituted" in the United States, <u>id.</u> ¶¶ 21, 23, and thus under Brazilian law, United States law, not the Brazilian Statutes, govern their claims. <u>Id.</u> ¶¶ 20, 23.  Because a Brazilian court would not apply substantive Brazilian law to plaintiffs' claims if they were asserted in Brazil, plaintiffs have no basis to ask this Court to find that the Brazilian Statutes apply.

<u>Second</u>, even if Brazilian law generally were to apply as a choice-of-law matter, the CVM Regulations that plaintiffs invoke independently do not apply to the securities plaintiffs allege to have purchased. <u>See</u> Ex. 4 ¶¶ 13-23.  The CVM's jurisdiction is limited to Brazil itself;

---

[35]     The <u>OPERS</u> complaint asserts Brazilian law claims solely with respect to BOVESPA-traded shares. <u>OPERS</u> Compl. ¶ 10.  Thus, those claims – as well as any claims asserted by plaintiffs in <u>Central States</u>, <u>NN Investments</u> and <u>WSIB</u> based upon BOVESPA-traded shares – must be arbitrated. <u>See</u> Point II.E. <u>supra</u>.

thus, it cannot impose or enforce its regulations with respect to securities that are listed and sold outside of Brazil, which plaintiffs allege to be the case for the securities they purchased.  Id. ¶¶ 15-21.  Accordingly, the CVM Regulations cannot support a private action when the conduct that forms the basis of those claims – SEC filings – is beyond the CVM's jurisdiction.  Id. ¶ 22.  Nor does Article 2, Section 2 of the BSA create an independent cause of action or remedy to support plaintiffs' claims.  Id. ¶ 24.

Third, plaintiffs' BCC and the BCL claims fail in any event.  As a matter of Brazilian law, only realized damages are recoverable, see id. ¶¶ 25-27, and in the securities context, that requires at least a sale at a loss; a mere drop in price (whatever the cause) is insufficient.  Id. ¶ 27.  None of the plaintiffs allege that it sold its Petrobras ADRs or Petrobras Notes.  Id. ¶ 28.  Furthermore, the general provisions of the BCC invoked by plaintiffs are superseded by the specific provisions of the BCL regarding civil liability, rendering the BCC articles invoked by plaintiffs inapposite.  Id. ¶¶ 29-31.

Accordingly, the Court should dismiss the Brazilian law claims asserted against Petrobras in Central States, NN Investment, and WSIB that are based on plaintiffs' non-BOVESPA-traded Petrobras securities.

## VIII. ALL SECTION 15 CLAIMS ASSERTED AGAINST HELMS MUST BE DISMISSED BECAUSE HE WAS NOT A CONTROL PERSON

Four of the Individual Actions – NY Funds, OPERS, Transamerica and WSIB – bring claims against Mr. Helms under Section 15 of the Securities Act, alleging that he should be liable for the alleged wrongdoing of Petrobras, PGF and/or Petrobras International Finance Company S.A. based on his purported status as a control person.[36]  However, the only factual allegations

---

[36]     See NY Funds Compl. Count VI; OPERS Compl. Count X; Transamerica Compl. Count VI; WSIB Compl. Count XIII.

(as opposed to legal conclusions) in support of these claims – and, indeed, the only factual allegations about Mr. Helms in any of the Individual Action complaints – are that he served as the authorized U.S. representative for Petrobras and certain of its affiliates, was a member of its Investor Relations Department and signed the registration statement for the relevant note offerings.[37]  As the Court has previously held, allegations that merely identify an individual's corporate position are insufficient to plead a control person claim under Section 15.  See Pub. Emps.' Ret. Sys. of Miss., 714 F. Supp. 2d at 485.  Instead, "plaintiffs must also allege, to make out a Section 15 claim, meaningful culpable conduct by an individual defendant beyond mere status."  Id.  The Individual Plaintiffs have failed to do so with respect to Mr. Helms and, accordingly, all of the Section 15 claims asserted against him must be dismissed.

## CONCLUSION

For the foregoing reasons, the Aura Capital action should be dismissed in its entirety and certain claims in the other Individual Actions should be dismissed as indicated in Appendixes A and B.  The remaining claims should be dismissed for the reasons stated in the motion to dismiss the Class Action.

---

[37]     See NY Funds Compl. ¶ 42; OPERS Compl. ¶ 430; Transamerica Compl. ¶ 69; WSIB Compl. ¶ 42.

Dated: New York, New York
August 21, 2015

Respectfully submitted,

CLEARY GOTTLIEB STEEN &
  HAMILTON LLP

By: ___ /s/ Mitchell A. Lowenthal ___

    Mitchell A. Lowenthal
    Roger A. Cooper
    Elizabeth Vicens

    One Liberty Plaza
    New York, New York  10006
    (212) 225-2000

*Attorneys for the Petrobras Defendants*
  (as defined herein)


SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP

By: _____ /s/ Jay B. Kasner _____

    Jay B. Kasner
    Scott D. Musoff

    Four Times Square
    New York, New York  10036
    (212) 735-3000

*Attorneys for the Underwriter Defendants*
  (as defined herein)

# APPENDIX A – CHART OF DISMISSAL ARGUMENTS APPLICABLE TO THE PETROBRAS DEFENDANTS

| Individual Actions | Point I | Point II.A | Point II.B | | Point II.C | Point II.D | Point II.E | Point III | Point IV | Point V | Point VI | Point VII | Point VIII |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | No Falsity, Materiality, Scienter[38] | Certain Plaintiffs Lack Standing | Note Purchases Not Domestic | No § 12(a)(2) Standing | Claims Outside Repose Period | No § 11 Reliance | Arbitration of Brazilian Claims | No § 18 Eyeball Reliance | Claims Precluded by SLUSA | Not § 12(a)(2) Statutory Sellers | Negligent Misrep. Claims Fail | Brazilian Law Not Applicable | Helms Not Control Person |
| Dimensional | X | X | | | | | | | | | | | |
| Skagen | X | | X | X | X | | | X | | X | | | |
| NY Funds | X | | X | X | X | X | | X | | X | | | X |
| Transamerica | X | | X | X | X | X | | X | | X | | | X |
| Aberdeen Emerging | X | | | | X | | | X | | | | | |
| OPERS | X | | X | | X | | X | X | | | | | X |
| Central States | X | | | | X | | | X | X | | | X | |
| WSIB | X | | X | X | X | | X | X | | X | X | X | X |
| Aberdeen Lat. Am. | X | | | | X | | | X | | | | | |
| NN Investment | X | X | | | X | | X | X | X | | | X | |
| Aura Capital | X | X (entire action) | | | | | | | | | | | |

---

[38] Based upon arguments incorporated from the Motion to Dismiss the CAC.

## APPENDIX B – CHART OF DISMISSAL ARGUMENTS APPLICABLE TO THE UNDERWRITER DEFENDANTS

| Individual Actions | No Falsity, Materiality, Scienter[39] | Note Purchases Not Domestic | No § 12(a)(2) Standing | No § 11 Reliance | Not § 12(a)(2) Statutory Sellers | Negligent Misrep. Claims Fail |
|---|---|---|---|---|---|---|
| | **Point II.A** | | **Point II.B** | **Point II.D** | **Point V** | **Point VI** |
| *Skagen* | X | X | | | | |
| *NY Funds* | X | X | X | X | X | |
| *Transamerica* | X | X | X | X | X | |
| *OPERS* | X | X | X | | X | |
| *WSIB* | X | X | X | | X | X |

---

[39] Based upon arguments incorporated from the Motion to Dismiss the CAC.

**APPENDIX C – CHART OF ACTIONS NAMING UNDERWRITER DEFENDANTS**

| Individual Actions | Named Underwriter Defendants | Notes Offering(s) at Issue | Claims Asserted Against Named Underwriter Defendants |
|---|---|---|---|
| *Skagen* | | | Section 11 |
| | BB Securities Ltd. | 2013, 2014 | |
| | Citigroup Global Markets Inc. | 2013, 2014 | |
| | J.P. Morgan Securities LLC | 2013, 2014 | |
| | Itau BBA USA Securities, Inc. | 2013 | |
| | Morgan Stanley & Co. LLC | 2013 | |
| | HSBC Securities (USA) Inc. | 2013, 2014 | |
| | Mitsubishi UFJ Securities (USA), Inc. | 2013 | |
| | Merrill Lynch, Pierce, Fenner & Smith Incorporated | 2013 | |
| | Standard Chartered Bank | 2013 | |
| | Bank of China (Hong Kong) Limited | 2014 | |
| | Banco Bradesco BBI S.A. | 2014 | |
| | Banca IMI S.p.A. | 2014 | |
| | Scotia Capital (USA) Inc. | 2014 | |

| Individual Actions | Named Underwriter Defendants | Notes Offering(s) at Issue | Claims Asserted Against Named Underwriter Defendants |
|---|---|---|---|
| *NY Funds* | | | Section 11 and 12(a)(2) |
| | BB Securities, Ltd. | 2013, 2014 | |
| | Citigroup Global Markets Inc. | 2013, 2014 | |
| | J.P. Morgan Securities LLC | 2013, 2014 | |
| | Itau BBA USA Securities, Inc. | 2013 | |
| | Morgan Stanley & Co. LLC | 2013 | |
| | HSBC Securities (USA) Inc. | 2013, 2014 | |
| | Mitsubishi UFJ Securities (USA), Inc. | 2013 | |
| | Merrill Lynch, Pierce, Fenner & Smith Incorporated | 2013 | |
| | Standard Chartered Bank | 2013 | |
| | Bank of China (Hong Kong) Limited | 2014 | |
| | Banco Bradesco BBI S.A. | 2014 | |
| | Banca IMI S.p.A. | 2014 | |
| | Scotia Capital (USA) Inc. | 2014 | |

| Individual Actions | Named Underwriter Defendants | Notes Offering(s) at Issue | Claims Asserted Against Named Underwriter Defendants |
|---|---|---|---|
| *Ohio PERS* | | | Section 11 and 12(a)(2) |
| | BB Securities Ltd. | 2014 | |
| | Citigroup Global Markets Inc. | 2014 | |
| | J.P. Morgan Securities LLC | 2014 | |
| | HSBC Securities (USA) Inc. | 2014 | |
| | Bank of China (Hong Kong) Limited | 2014 | |
| | Banco Bradesco BBI S.A. | 2014 | |
| | Banca IMI S.p.A. | 2014 | |
| | Scotia Capital (USA) Inc. | 2014 | |
| *Transamerica* | | | Section 11 and 12(a)(2) |
| | Citigroup Global Markets Inc. | 2013, 2014 | |
| | J.P. Morgan Securities LLC | 2013, 2014 | |
| | Morgan Stanley & Co. LLC | 2013 | |
| | HSBC Securities (USA) Inc. | 2013, 2014 | |

| Individual Actions | Named Underwriter Defendants | Notes Offering(s) at Issue | Claims Asserted Against Named Underwriter Defendants |
|---|---|---|---|
| *WSIB* | | | Section 11 and 12(a)(2) and Negligent Misrepresentation |
| | BB Securities Ltd. | 2013, 2014 | |
| | Citigroup Global Markets Inc. | 2013, 2014 | |
| | J.P. Morgan Securities LLC | 2013, 2014 | |
| | Itau BBA USA Securities , Inc. | 2013 | |
| | Morgan Stanley & Co. LLC | 2013 | |
| | HSBC Securities (USA) Inc. | 2013, 2014 | |
| | Mitsubishi UFJ Securities (USA), Inc. | 2013 | |
| | Merrill Lynch, Pierce, Fenner & Smith Incorporated | 2013 | |
| | Standard Chartered Bank | 2013 | |
| | Bank of China (Hong Kong) Limited | 2014 | |
| | Banco Bradesco BBI S.A. | 2014 | |
| | Banca IMI S.p.A. | 2014 | |
| | Scotia Capital (USA) Inc. | 2014 | |